**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CRAIG POHLMAN, Individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NCR CORPORATION,<br><br>Defendant. | No. 12 cv 6731<br><br>Judge Sharon Johnson Coleman |

## Memorandum Opinion and Order

On August 22, 2012, plaintiff Craig Pohlman ("Pohlman") filed a Complaint against his former employer, NCR Corporation ("NCR"), alleging that NCR failed to properly compensate him for all the time worked in violation of the Fair Labor Standards Act, the Illinois Minimum Wage Law, and the Illinois Wage Payment and Collection Act. On September 17, 2012, NCR moved to compel arbitration. This Court denied the motion without prejudice because the parties had not yet engaged in any discovery and thus, there was insufficient evidence at that time for this Court to conclude that a valid enforceable agreement to arbitrate exists as a matter of law. The parties conducted discovery on the issue and now NCR renews its motion to compel arbitration. For the reasons stated below, this Court grants the motion.

**Background**

Craig Pohlman worked for NCR from approximately 1991 to 2012. In September of 1996, NCR mailed its employees a letter and brochure informing them about NCR's new dispute resolution policy Addressing Concerns Together ("ACT"), which provided for a three-part process for resolving disputes between NCR and employees—informational resolution, written

1

appeal, and binding arbitration. The brochure enumerated the limited circumstances in which ACT does not apply: workers' compensation, unemployment insurance claims, benefits claims by the Employee Retirement Income Security Act, confidentiality/non-compete agreements, or intellectual property rights. The brochure included an agreement ("Agreement") stating that while the employee did not need to sign anything, he assented to all of ACT's provisions, including arbitration, by continuing his employment with NCR or accepting "any transfers, promotions, merit increases, bonuses, or other benefits of employment." Pohlman does not recall receiving the Agreement and denies knowledge of the arbitration program. NCR moves to compel arbitration based on the ACT agreement.

**Legal Standard**

The Federal Arbitration Act ("FAA") requires courts to stay or dismiss proceedings and to compel arbitration if an issue or controversy is covered by a valid arbitration agreement. 9 U.S.C. §§ 3-4; *AT&T Mobility LLC v. Conception*, __ U.S. __, 131 S. Ct. 1970 (2011). In deciding whether to grant the motion to compel arbitration, the court must first determine whether the parties agreed to arbitrate the dispute at issue. *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, __ U.S. __, 130 S. Ct. 2847, 2856 (2010). The Supreme Court has stated that arbitration is "strictly a matter of consent, and thus is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Id*. at 2857. The FAA reflects a policy favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

The question of whether the parties agreed to arbitrate is a decision for the court and not for the arbitrator. *AT&T Techs., Inc. v. Commc'ns of Workers Am.*, 475 U.S. 643, 649 (1986). In order to compel arbitration, the court must find that (1) a written arbitration agreement exists

between the parties, (2) there is a dispute among the parties within the scope of arbitration agreement, and (3) one of the parties is refusing to comply with the arbitration agreement by refusing to participate in arbitration. *Johnson v. Orkin*, __ F.Supp2d. at 10 (citing *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 690 (7th Cir. 2005)). An "order to arbitrate should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). The party opposing arbitration has the burden of proving that the arbitration agreement is unenforceable. *Shearson/Am. Express v. McMahon*, 482 U.S. 220, 227 (1987).

If the making of the arbitration agreement is in dispute, the court must proceed to trial to decide that issue. 9 U.S.C. § 4. The Seventh Circuit has analogized the evidentiary standard for determining whether an arbitration agreement is valid to the evidentiary standard for a motion for summary judgment stated in the Federal Rule of Civil Procedure 56(e). *Johnson v. Orkin, LLC*, __ F.Supp.2d __, 8 (N.D. Ill. 2013). In order to obtain a trial on the merits of the contract, the party opposing arbitration carries the burden of identifying a triable issue of fact concerning the existence of the agreement. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). As with a motion for summary judgment, evidence presented by the party opposing arbitration is accepted as true, and all inferences are drawn in his favor. *Id.* at 735. However, a party does not meet the burden of demonstrating a genuine issue of material fact for trial merely by denying the facts upon which the right to arbitrate rests. *Id.*

In determining whether the parties entered into a valid arbitration agreement, the court applies state law that governs the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753,

758-59 (7th Cir. 2001). Arbitration agreements in the employment context "are to be evaluated according to the same standards as any other contract." *Penn*, 269 F.3d at 758. Under Illinois law, "an offer, an acceptance and consideration are the basic ingredients of a contract." *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 329 (1977).

**Discussion**

NCR asserts that the parties entered a valid and enforceable arbitration agreement when NCR mailed Pohlman and other employees a letter and brochure outlining the arbitration policy, Addressing Concerns Together ("ACT") in September 1996. The brochure included an agreement stating that, while the employee did not need to sign anything, by continuing his employment with NCR or accepting "any transfers, promotions, merit increases, bonuses, or other benefits of employment" the employee manifested his assent to all of ACT's provisions. Thus, NCR further asserts that Pohlman accepted the terms of the arbitration agreement by continuing his employment with NCR. Pohlman contends that there is insufficient evidence showing he received NCR's offer of the arbitration agreement because he does not recall receiving it and there is no other documentation of receipt such as a certified mail receipt.

Under Illinois law, an employer mailing materials containing an arbitration agreement and the method of acceptance constitutes an offer, *Melena v. Anheuser-Busch, Inc.*, 219 Ill.2d 135, 151 (2006), and an employee's continuing employment is a form of consideration for employment agreements, *Duldulao v. Saint Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 490 (1987). The court in *Melena* held that the mailing of the Dispute Resolution Program materials to its employees was Anheuser-Busch's "offer." *Id*. The letter stated that "by continuing or accepting an offer of employment" with Anheuser-Busch, the employee agrees to submit to the terms of the Dispute Resolution Program. *Id*. In *Duldulao*, the court held that an

4

employee's continued work constitutes consideration for policy statements disseminated to the employee if the employee continues to work after learning of the policy statement. *Id*.

Here, there is no dispute that NCR's mailing of the brochure and policy to Pohlman constitutes an offer under Illinois law. There is also no dispute that Pohlman's continued work for NCR for approximately 16 years can constitute his assent and consideration for the ACT policy. The issue is whether Pohlman received notice of the ACT policy and the arbitration agreement within it. Where there is a signed agreement, the signatories are charged with knowing what is in the agreement. *Faulkenberg v. CB Tax Franchise Systems*, LP, 637 F.3d 801, 808 (7th Cir. 2011). Unlike the plaintiff in *Melena*, Pohlman was not required to sign any acknowledgment of receiving the information about the ACT program in order to accept the offer. However, the FAA does not require agreements to be signed, only written. 9 U.S.C. § 3.

Because NCR mailed the ACT program materials to Pohlman, there is a presumption of delivery. *Hagner v. United States*, 285 U.S. 427, 430 (1932). The Supreme Court has stated, "proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Id*. Because proof of the letter's placement in the post office is sufficient for delivery, the burden is on the recipient to provide evidence showing that they did not receive the letter. *Id*. In *Vincent v. City Colleges of Chicago*, the court held that plaintiff's proof of mailing a letter of termination to the Association was enough to show delivery. 485 F.3d 919, 922 (7th Cir. 2007). The court reasoned that despite the Association's denial of receiving the letter, which was sent to its old address, the Association should have received it because the Postal Service forwards letters, which would include plaintiff's letter, for one year after a move. *Id*.

5

Illinois courts have applied the presumption of delivery rule to arbitration contracts. *Johnson v. Arrow Financial Services*, LLC, 06 C 0013, 2006 WL 2710663 (N.D. Ill. 2006). In *Johnson v. Arrow*, Capital One sent the plaintiff an amendment to the customer agreement containing an arbitration clause in the mail. *Id*. at *2. The amendment provided an opt-out coupon to be filled out and mailed back if plaintiff opted out of the arbitration agreement. *Id*. Plaintiff never returned the opt-out coupon and stated that she did not recall receiving the amended customer agreement and arbitration coupon. *Id*. The court held that the plaintiff was presumed to have received the mail because "a party need not show conclusively that a document was placed in the mail; a custom or policy of mailing creates a presumption that such mailing occurred." *Id*. at *4. Because the plaintiff presented no evidence besides not recalling receiving the documents, the court held that the plaintiff failed to rebut the presumption of delivery. *Id*; *see also Spivey v. Adaptive Marketing, LLC*, 660 F.Supp.2d. 940 (S.D. Ill. 2009) (holding that mailing to the accurate home address created a presumption of delivery, and unclear deposition responses to whether he received the mailing do not rebut the presumption).

In this case, NCR provides affidavits from Connie Cox, Operations Manager for Early Express Mailing Services, Inc., who supervised the mailing of NCR's ACT brochure and related letter; C. Mark Kingseed, the Human Resources and Law Vice President of NCR, who was instrumental in the drafting and implementation of the ACT program and the mailing of the letter and brochure; and Karen Ewing, the Operations Manager for NCR, who supervised the distribution of incoming mail. (Dkt. #13-2, 13-3, 13-4). Ms. Cox averred that the mailing began on September 6, 1996, and completed on September 10, 1996. (Dkt. #13-2 at 2). Mr. Kingseed stated that on September 5, 1996, he instructed NCR's Operations Manager of Mailing Services, that from September 6, 1996, through October 6, 1996, any mail returned undeliverable to NCR

6

should be immediately forwarded to his attention in the NCR law department. (Dkt. #13-3) Mr. Kingseed further stated that he forwarded all returned letters to the employees at their work addresses. (*Id.*) Ms. Ewing stated that on September 5, 1996, she instructed all employees handling incoming mail that, from September 6, 1996, to October 6, 1996, any mail returned undeliverable should be immediately forwarded to Mark Kingseed in NCR's law department. (Dkt. #13-4) NCR also provides the list of employees with their addresses where NCR sent the ACT brochure. (Dkt. #13-2 at 30-35). Craig Pohlman is listed and his address is given as P.O. Box 59325, Schaumburg, IL 60159-0325. [1] (*Id.* at 35) In his deposition, Pohlman testified that he used the P.O. Box 59325, Schaumburg, IL 60159-0325, address from 1992 to November 1996 and received mail, including W-2s, pay stubs, and other mailings from NCR at that address. (Dkt. #31-4 at 35:20-36:4) Pohlman further testified that he was receiving mail at the Schaumburg P.O. Box for the months of August 1996, September 1996, and at least until October 26, 1996. (*Id.* at 40:12-18) Although Pohlman testified that he did not recall receiving the ACT brochure and letter, he admitted that it was possible that he did receive it but cannot recall because it was in 1996. (*Id.* at 44:13-45:3) Additionally, NCR provided an email sent on November 22, 2002, from "HR, Communications" to "All Users (NCR)" outlining changes to the ACT process. (*Id.* at 76, Ex. 17) Pohlman testified that he had only one email address at NCR and acknowledged receiving NRC notifications at that email, including in 2002. (*Id.* at 45:9-46:18). In order to rebut the presumption of delivery, Pohlman relies solely on his deposition where he states that he does not recalling receiving the ACT materials and that the materials do not look familiar to him.

---

[1] These affidavits were provided with the original motion to compel arbitration. The Court denied the motion at that time, however, in part because Pohlman's declaration stated unequivocally that he had not received the ACT mailing. The parties have since conducted discovery, which amplified the evidentiary record before the Court.

In *Tinder v. Pinkerton Security*, the Seventh Circuit held that the arbitration agreement between the plaintiff and the employer was valid even though the plaintiff claimed not to have received the arbitration program brochure. 305 F.3d at 736. The court weighed the plaintiff's statement against Pinkerton's evidence of affidavits indicating that the brochure was sent and presumably received. *Id*. at 736. The court held that the plaintiff did not raise a genuine issue of material fact by only offering that she does not recall seeing or reviewing the brochure. *Id*.

While this Court initially distinguished the *Tinder* case based on the additional evidence there of notice to the employees through other means besides the mailing, this Court now finds that evidence before it following discovery supports the conclusion that NCR mailed the brochure and letter for ACT to the address where Pohlman was receiving mail in September 1996. Pohlman's statements that he does not recall seeing or receiving the ACT brochure and letter fail to rebut the presumption that the mailed offer was delivered. This is particularly true, where there is evidence of the email sent to all NCR employees in 2002 outlining the changes to the ACT program and Pohlman continued his employment for an additional ten years. Therefore, Pohlman fails to raise a genuine issue of material fact for trial on the issue of formation of an arbitration agreement.

Courts favor enforcing arbitration agreements when parties have entered into a valid and enforceable arbitration agreement. *See Penn,* 269 F.3d at 759; *see also Phoenix v. Rosen,* 242 Ill.2d 48 (2011). Courts therefore enforce arbitration agreements unless "it may be said with positive assurance that the arbitration clause" cannot cover the asserted dispute. *Steelworkers v. Warrior & Gulf*, 363 U.S. at 582-83.

Pohlman's claims fall within the scope of that agreement. The brochure detailing the ACT program states that any work-related problem is covered by ACT with exceptions limited

8

to: workers' compensation, unemployment insurance claims, benefits claims covered by the Employee Retirement Income Security Act, confidentiality/non-compete agreements, or intellectual property rights. Pohlman's claim for recovering compensation for time worked under the Illinois Minimum Wage Law, the Illinois Wage Payment and Collection Act, and the Fair Labor Standards Act does not fall into any of those limited exceptions. Accordingly, this Court finds Pohlman's claims fall within the scope of the Agreement.

Pohlman asserts that NCR has waived its right to arbitrate disputes with him. In support of his argument, Pohlman's response to the motion to compel arbitration cites cases in which the party waived its right to arbitrate because the party engaged in adjudication in the judicial forum in the same case—removing the case, engaging in discovery, filed a complaint in federal or state court. To determine whether a party has waived a contractual right to arbitrate, the court must "determine whether based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate." *Ernst & Young LLP v. Baker O'Neal Holdings, Inc*. 304 F.3d 753, 757 (7th Cir. 2002).

NCR has not acted inconsistently with the right to arbitrate in the present case. NCR's involvement in a separate case in the judicial setting is not a waiver to the right to arbitrate in the present case. *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997)("[O]nly prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate.") In *Johnson v. Arrow*, the court found that Capital One's litigation in other matters involving other Capitol One customers does not show that there is not a valid existing arbitration agreement between Capital One and the plaintiff. 2006 WL 2710663 at *4. Here, NCR's previous involvement in litigation in 2008, although involving the same causes of action, had different named parties and involved a similar but separate set of facts. As

the court encountered in *Goodale v. George S. May Int'l Co.*, rather than "point[ing] to the circumstances in *this particular* case" that show NCR has acted inconsistently with its right to arbitrate, Pohlman is asking the Court to "look to the circumstances of another case." 10 C 5733, 2011 WL 1337349 at *2 (N.D. Ill. Apr. 5, 2011). The court held in that case that because defendant's actions in the present case are not inconsistent with the right to arbitrate, defendants have not waived its right to seek arbitration. *Id*. Similarly, in this case, NCR moved to compel arbitration promptly after the Complaint was file and did not acted inconsistently with the right to arbitrate. For these reasons, NCR has not waived the right to arbitrate.

Lastly, Pohlman argues, without citing any authority, that a subsequent change in the ACT program invalidated NCR's 1996 arbitration agreement. The one-page Mutual Agreement to Arbitrate All Employment Related Claims (MAA) states at the bottom that it "supersedes any other written or oral agreement relating to arbitration." The MAA requires both NCR and the employee to arbitrate all employment related claims, except for workers' compensation or ERISA claims. The MAA also requires the employee to sign to consent to the agreement. According to the one-page MAA document, "NCR requires this Agreement to be signed before [one] can begin employment at NCR. Because Pohlman was already an employee at the time and did not sign this agreement, he is not bound to the MAA. Pohlman has not offered evidence during discovery to show that this new policy supplanted the ACT policy and Agreement for existing employees. Furthermore, Pohlman has not shown the authenticity of the document. Without more, this Court is unable to conclude that the ACT is invalid.

**Conclusion**

For the reasons stated herein, this Court finds that the parties entered a valid and enforceable agreement to arbitrate and Pohlman's claims fall within the scope of the agreement. Therefore this Court grants NCR's Motion to Compel Arbitration [31] and dismisses the case.

Date: July 17, 2013

Enter: _____
Sharon Johnson Coleman
United States District Judge